1
2
3                          UNITED STATES DISTRICT COURT
4                                DISTRICT OF NEVADA
5                                      * * *
6   *IN RE* X-TREME BULLETS, INC.,              Case No. 3:21-cv-00062-MMD
7                               Debtor.
    _____                           Bankruptcy Case No. 18-50609
8
    J. MICHAEL ISSA, *as Trustee of the*       Adversary No. 20-05019-BTB
9   *HMT Liquidating Trust*,
10                            Appellant,                    ORDER
        v.
11
    ROYAL METAL INDUSTRIES, INC.,
12
                              Appellee.
13

14  **I.    SUMMARY**

15        This bankruptcy appeal is before the Court for review on the merits. Appellant J.

16  Michael Issa, HMT Liquidating Trust Trustee, argues that the Bankruptcy Court erred by

17  rescinding a previously approved derivative standing stipulation and granting adversary-

18  defendant and now Appellee Royal Metal Industries' ("Royal Metal") motion to dismiss.

19  (ECF No. 10.) Issa likewise appeals the denial of adversary-plaintiff's motion for

20  reconsideration. (*Id.*) Royal Metal asserts that the Bankruptcy Court properly granted its

21  motion to dismiss because the adversary was brought by the unsecured creditor's

22  committee (the "Committee"), a party which lacked standing to assert the adversary

23  claims, and consequently the denial of the motion to reconsider was also proper.[1] (ECF

24  No. 30.) Because the Court finds that the Bankruptcy Court either abused its discretion

25  by rescinding the derivative standing stipulation or ruled contrary to law by finding the

26  Bankruptcy Court lacked the authority to approve a derivative standing stipulation, the

27

28  _____
              [1]Issa filed a reply. (ECF No. 35.)

Court will reverse the Bankruptcy Court's order granting Royal Metal's motion to dismiss the Adversary and vacate the order denying the Committee's motion for reconsideration.

## II.    BACKGROUND

This appeal arises from an adversary proceeding ("Adversary") related to a Chapter 11 bankruptcy case.[2] On June 8, 2018, eight companies in the business of manufacturing, assembling, and selling small arms ammunition (collectively, "Debtors") filed Chapter 11 bankruptcy petitions.[3] Although the Debtors are separate companies, one individual—David C. Howell—was the principal of each Debtor.[4] (Exh. 9, ECF No. 10-2 at 161.) While the bankruptcy proceedings were not consolidated, the Debtors coordinated extensively throughout their respective cases. Aspects of that coordination gave rise to the issues underlying this appeal, as explained below.

### A.    Chief Restructuring Officer and the Unsecured Creditors' Committee

Approximately three weeks after the Debtors' petitions were filed, the Debtors filed a motion to engage J. Michael Issa as their Chief Restructuring Officer ("CRO") (Exh. 9, ECF No. 10-2 [Bk. DE 69]), which the Bankruptcy Court later approved. (Exh. 10, ECF No. 10-2 [Bk. DE 127].) As CRO, Issa would be "responsible for overseeing the operations of the Debtors and for supervising the administration of the Debtors' Chapter 11 cases." (Exh. 9, ECF No. 10-2 at 145.) The Debtors' motion to engage Issa further clarified that Issa would:

> supervise the operations of the Debtors' businesses and all aspects of the Debtors' financial affairs, assist the Debtors to fulfill their reporting obligations under the Bankruptcy Code and to the Office of the United

[2]This appeal arises from the same bankruptcy proceeding as another appeal pending before the Court, *Issa v. Capital Cartridge, LLC*, 3:21-cv-00060-MMD. The orders giving rise to both appeals were argued together before the Bankruptcy Court, and both appeals present the same legal questions.

[3]The Debtors are X-Treme Bullets, Inc.; Howell Munitions & Technology, Inc.; Ammo Load Worldwide, Inc.; Clearwater Bullet, Inc.; Howell Machine, Inc.; Freedom Munitions, LLC; Lewis-Clark Ammunition Components, LLC; Components Exchange, LLC.

[4]Howell owned 95% of the issued and outstanding stock of Debtor Howell Munitions & Technology, Inc., which in turn was the sole shareholder of four of the Debtors and the complete or majority membership interest owner of the other three Debtors. (Exh. 9, ECF No. 10-2 at 148.)

1
2
3
4

> States Trustee[]; ***identify, and pursue recovery from the disposition of, assets of the Debtors' estates***; address and resolve disputed claims asserted against the Debtors; and provide business plan analysis and assistance to the Debtors' counsel with respect to the formulation and preparation of a plan of reorganization and accompanying disclosure statement.

5
6
7
8
9
10

(*Id.* at 149 (emphasis added).) Issa's engagement was intended to "help to ensure that the cases are administered in a fair and competent manner, for the benefit of Debtors' creditors." (*Id.*) In addition to Issa's enumerated responsibilities, the motion to engage Issa included an umbrella consideration that he may perform "such other services as may be mutually agreed upon by the Debtors and [his firm] in furtherance of a resolution of these cases." (*Id.* at 152.)

11
12
13
14
15

On July 23, 2018, the U.S. Trustee filed a notice in the Bankruptcy Court appointing an official Committee of Unsecured Creditors (the "Committee"), pursuant to 11 U.S.C. § 1102(a).[5] Issa describes that the Committee and the Debtors worked collaboratively on many issues during the pendency of the bankruptcy litigation, including closing a contested sale of the Debtors' operating assets. (ECF No. 10 at 9.)

16

**B.    The Derivative Standing Stipulation**

17
18
19
20
21
22
23

On June 1, 2020, Issa entered into a stipulated agreement (the "Stipulation") with the Committee which purported to grant the Committee derivative standing to commence, prosecute, and resolve certain claims and causes of action on behalf of the Debtors. (Exh. 4, ECF No. 10-2 [Bk. DE 921].) The Stipulation granted the Committee the authority to pursue claims relating to certain pre-petition transactions between certain Debtors and a list of third-party targets. (*Id.* at 28-29.) One third-party target named in the Stipulation was Royal Metal. (*Id.* at 29.)

24
25
26
27

The Bankruptcy Court approved the Stipulation two days later and entered an order granting the Committee derivative standing according to the Stipulation's terms (the "Stipulation Order"). (Exh. 5, ECF No. 10-2 [Bk. DE 923].) The Stipulation Order, which

28

[5]The notice appointing the Committee was submitted by Royal Metal as an exhibit attached to its motion to dismiss. (ECF No. 11-5 [Bk. DE 107].)

1  the Committee's Counsel prepared, stated that the Court would approve the Stipulation
2  "having determined that good cause exists for [its] approval." (*Id.* at 33.) The Committee
3  commenced the Adversary two days after the Stipulation Order issued. (Exh. 6, ECF No.
4  10-2 [Adv. DE 1].) In the Adversary complaint, the Committee explained that the
5  Bankruptcy Court had approved the derivative standing stipulation which authorized the
6  Committee to assert the claims on behalf of the Debtors' estates. (*Id.* at 37.)

7  **C.    The Adversary and the Dismissal Order**

8  The Adversary sought to avoid transfers and recover previously transferred
9  property under 11 U.S.C. §§ 544, 548, and 550, and further sought to disallow claims
10  under 11 U.S.C. § 502(d). (Exh. 6, ECF No. 10-2 at 36.) The Committee sought avoidance
11  and turnover of more than $300,000 in fraudulent transfers from Debtor Howell Munitions
12  & Technology to Royal Metal. (*Id.* at 45-49.)

13  Royal Metal filed a motion to dismiss the Adversary complaint on September 2,
14  2020, based in large part on the Committee's standing to bring the claims in the
15  Adversary. (Exh. 7, ECF No. 10-2 [Adv. DE 7].) In that motion, Royal Metal argued: (1)
16  the Committee lacked Article III standing to bring the Adversary; (2) the Committee lacked
17  otherwise Congressionally granted statutory authority to maintain an action on the claims
18  alleged against Royal Metal; and (3) neither the Bankruptcy Court, nor Issa, nor the
19  Debtors were able to authorize the Committee to pursue the claims in the Adversary
20  complaint without express Congressional authorization. (*Id.* at 109-127.) Royal Metal
21  further contended that the Stipulation did not confer standing on the Committee, arguing:

22  there was no hearing held; no notice given; no opportunity for objection;
   unclear which causes of action, exactly, might be pursued by the Committee
23  and against which listed potential defendant; no discussion that any causes
   of action were colorable or viable; no analysis of the cost of pursuing the
24  causes of action verses the potential recovery; no indication of how
   Committee counsel would get paid for pursuing the suits (contingency,
25  hourly, special rate); and no discussion as to whether or not the Debtor had
   looked into the potential claims, whether the Committee made demand on
26  the Debtor to file suit against Royal, or whether the Debtor refused to file
   suit despite a demand.

27

28

4

(*Id.* at 119.) Royal Metal went on to cite several out-of-circuit opinions discussing that the trustee is the only person with authority to pursue claims on behalf of the estate, but did not cite to any cases from this circuit or any other that noted that derivative standing stipulations are commonly accepted and have been for more than 20 years. (*Id.* at 120-27.) Indeed, Royal Metal wrote "[t]here is no Ninth Circuit precedent as to whether a trustee, or debtor in possession, can grant an unsecured creditors' committee derivative standing to pursue claims under Sections 544, 548, and 550 of the Bankruptcy Code." (*Id.* at 124.)

The Bankruptcy Court held a hearing on October 13, 2020, on Royal Metal's motion to dismiss the Adversary complaint. (Exh. 12, ECF No. 10-2 [Adv. DE 56].) Royal Metal stated at the hearing that its motion implicated the Stipulation Order, and requested that its arguments also be considered a motion for reconsideration of the Stipulation Order. (*Id.* at 190-91.) Specifically, Royal Metal argued that the Bankruptcy Court should reconsider its Stipulation Order under Rule 60(b)(4) of the Federal Rules of Civil Procedure because it was "entered in violation of law." (*Id.* at 191.) At the conclusion of argument, the Bankruptcy Court ruled orally, stating "I'm granting your motion to dismiss the complaint." (*Id.* at 226.) The Bankruptcy Court did not orally acknowledge the request that the Court reconsider its Stipulation Order, but did order the parties to prepare an order in compliance with its ruling granting the motion to dismiss. (*Id.*)

Ten days later, the Bankruptcy Court entered an order granting Royal Metal's motion to dismiss the Adversary (the "Dismissal Order"). (Exh. 1, ECF No. 10-2 [Adv. DE 16].) The Dismissal Order granted the motion to dismiss and also granted Royal Metal's oral request for relief from the Stipulation Order. (*Id.* at 4.) Nothing in the hearing transcript nor in the Dismissal Order explained the reasoning for the Bankruptcy Court's changed ruling.

### D.    The Reconsideration Order

On October 27, 2020, the Committee filed a motion for reconsideration of the Dismissal Order. (Exh. 13, ECF No. 10-2 [Adv. DE 19].) The Committee argued that not

1    only had the weight of caselaw favored denying the motion to dismiss, but furthermore
2    dismissing the Adversary created a manifest injustice to the Debtors' estates. (*Id.* at 235-
3    36.) The Debtors had relied upon the Stipulation Order and presumed that the Committee
4    would be able to prosecute the claims in the Adversary on the Debtors' behalf; upon the
5    reversal of the Stipulation Order, the Debtors were unable to prosecute the claims against
6    Royal Metal because they were time-barred. (*Id.*) Had the Bankruptcy Court not approved
7    the Stipulation, the Debtors would have brought those claims themselves. (*Id.*) The
8    Committee further argued that there was no cause to reconsider the Stipulation Order
9    and, because Royal Metal had moved orally for the Bankruptcy Court to reconsider it, the
10   Committee had not had an adequate opportunity to respond. (*Id.* at 242.) The Debtors,
11   who were not a named party in the Adversary, filed a motion to join in the Committee's
12   motion for reconsideration. (Exh. 14, ECF No. 10-3 [Adv. DE 26].) Issa, writing both as
13   the former CRO and present Trustee, submitted a declaration stating that "[b]ut for the
14   Stipulation, approved by this Court's Stipulated Order, the Debtors themselves would
15   have prosecuted avoidance claims against [Royal Metal]." (Exh. 15, ECF No. 10-3 at 4.)
16   Royal Metal opposed the motion for reconsideration of the Dismissal Order. (Exh. A, ECF
17   No. 31 [Adv. DE 25].)

18        The Bankruptcy Court held a hearing on the motion for reconsideration on January
19   7, 2021. (Exh. C, ECF No. 31 [Adv. DE 47].) At the hearing, Royal Metal orally moved to
20   strike the joinder motion on the grounds that the Debtors were not a party in the
21   Adversary. (*Id.* at 53-66.) The Bankruptcy Court orally denied the motion for
22   reconsideration and entered a written order on January 22, 2021 ("Reconsideration
23   Order").[6] (Exh. 17, ECF No. 10-4 [Adv. DE 31].)

24        Issa filed a notice of appeal of the Dismissal Order and the Reconsideration Order.[7]

25

26   _____

     [6]The Bankruptcy Court did not make any express ruling on the joinder issues,
27   instead simply denying the motion for reconsideration.

28        [7]Issa's initial notice of appeal was filed January 22, 2021 (ECF No. 11-20 [Adv. DE
     29]), and appealed only the Dismissal Order. Issa filed an amended notice of appeal on

### E.    The Plan and This Appeal

The Debtors filed their First Amended Joint Plan (the "Plan") on July 17, 2020. (Exh. 18, ECF No. 10-4 [Bk. DE 973].) Per the Plan's terms, all of the Debtors' assets, including any avoidance causes of action, would be transferred to and vested in a liquidating trust (the "Trust") upon the Plan's effective date. (*Id.* at 41-54.) The Trust would be administered by J. Michael Issa, as Trustee, who would become responsible for prosecuting or settling avoidance causes of action for each Debtor, and otherwise oversee the Trust for the benefit of each Debtor's creditors. (*Id.*) Moreover, upon the Plan's effective date, Issa would become the legal representative of each Debtor's estate. (*Id.* at 45.) Specifically, the Plan states:

> as the representative of each Debtor's Estate, the Liquidating Trust Trustee shall succeed to all of the rights and powers of each Debtor and its Estate with respect to all Causes of Action of the Debtor, and shall be substituted for, and shall replace, the Debtor as the party-in-interest in all such litigation pending as of the Effective Date.

(*Id.*) The Plan further states that all right to and interest in any cause of action would automatically transfer to Issa upon the Plan's effective date. (*Id.* at 47-48.) The Bankruptcy Court entered an order confirming the Plan on October 1, 2020 ("Confirmation Order").[8] The Plan became effective on October 26, 2020. (ECF No. 11-10 [Bk. DE 1066].)

Issa now appeals—through the Committee—the Dismissal Order and Reconsideration Order as trustee of the Liquidating Trust and successor-in-interest to the Committee.[9] (ECF No. 1 at 2.) Royal Metal moved to dismiss the appeal, arguing alternatively that Issa either lacks standing because he is not the successor-in-interest to

_____

February 4, 2021 (ECF No. 11-24 [Adv. DE 52]), which appealed both the Dismissal and Reconsideration Orders.

[8] Royal Metal submitted the Confirmation Order as an exhibit attached to its motion to dismiss. (ECF No. 11-9 [Bk. DE 1058],)

[9] Issa states that the Committee may maintain the litigation under Federal Rule of Civil Procedure 25(c), which provides: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."

1  the Committee, or that Issa waived and forfeited the right to appeal the Dismissal and

2  Reconsideration Orders because he did not appear in the underlying Adversary. (ECF

3  No. 11 at 9-12.) The Court denied Royal Metal's motion to dismiss, finding that the

4  Committee was acting on behalf of the Debtor when the Adversary was filed, that Issa

5  was the appropriate successor-in-interest to the causes of action in the Adversary, and

6  that the Debtor had not forfeited its right to appeal the claims. (ECF No. 28.) The Court

7  now addresses the merits of the appeal.

8  **III.    LEGAL STANDARD**

9         A bankruptcy court's conclusions of law are reviewed de novo, "including its

10 interpretation of the Bankruptcy Code," and its factual findings are reviewed for clear

11 error. *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005); *see also In re Salazar,* 430 F.3d

12 992, 994 (9th Cir. 2005). In reviewing a bankruptcy court's decision, this Court ignores

13 harmless errors. *See In re Mbunda*, 484 B.R. 344, 355 (B.A.P. 9th Cir. 2012). "Decisions

14 committed to the bankruptcy court's discretion will be reversed only if 'based on an

15 erroneous conclusion of law or when the record contains no evidence on which [the

16 bankruptcy court] rationally could have based that decision.'" *In re Conejo Enter., Inc.*, 96

17 F.3d 346, 351 (9th Cir. 1996) (citation omitted). "Denial of a motion for relief under Civil

18 Rules 59 and 60 is reviewed for abuse of discretion." *In re Mellem*, 625 B.R. 172, 177

19 (B.A.P. 9th Cir. 2021). "To determine whether the bankruptcy court has abused its

20 discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy

21 court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we

22 consider whether the bankruptcy court's application of the legal standard was illogical,

23 implausible, or without support in inferences that may be drawn from the facts in the

24 record." *In re Open Medicine Institute, Inc.*, ---B.R.---, 2022 WL 1711774, at *6 (B.A.P.

25 9th Cir. 2022) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en

26 banc).

27        In addition, the Court need not address arguments not raised in the trial court but

28 "may do so to (1) prevent a miscarriage of justice or to preserve the integrity of the judicial

process, (2) when a change of law during the pendency of the appeal raises a new issue, or (3) when the issue is purely one of law." *In re Lakhany*, 538 B.R. 555, 560 (B.A.P. 9th Cir. 2015).

## IV.     DISCUSSION

Each argument in this appeal turns on the propriety of a debtor granting "derivative standing" to another for the purpose of pursuing adversary claims. Here, the Debtors purported to grant derivative standing to the Committee to pursue certain claims against target third parties as part of a coordinated effort to protect the estate's assets. The Stipulation was submitted to the Bankruptcy Court and approved. Royal Metal argues that this grant of derivative standing was improper because it failed to confer Article III standing on the Committee and exceeded the scope of the Debtors' and the Bankruptcy Court's authority under the Bankruptcy Code.

The Court previously found that the Stipulation authorized the Committee to bring the Debtors' claims on the Debtors' behalf and for the benefit of the Debtors' estates. (ECF No. 28.) Long-established Ninth Circuit and Ninth Circuit BAP precedent authorizes a debtor-in-possession to stipulate to derivative standing for unsecured creditors' committees, subject to a bankruptcy judge's approval. *See, e.g.*, *Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. Of Spaulding Composites Co. (In re Spaulding Composites Co., Inc.)*, 207 B.R. 899, 903 (B.A.P. 9th Cir. 1997). Because the Bankruptcy Court had approved the Stipulation, the Committee had standing to pursue the claims in the Adversary at the time the Adversary was commenced. The Bankruptcy Court's later decision to reconsider the Stipulation Order, rescind the Stipulation, and grant Royal Metal's motion to dismiss the Adversary was not explained in the hearing transcript or in the subsequent Dismissal Order.

Because the Bankruptcy Court did not explain its reasoning, the standard for review is somewhat unclear. Courts that have addressed the issue review a bankruptcy court's decision to rescind a derivative standing stipulation for abuse of discretion. *See Official Comm. of Equity Security Holders of Adelphia Commc'ns Corp. v. Official Comm.*

1    *of Unsecured Creditors of Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*,

2    544 F.3d 420, 424 (2d Cir. 2008). On the other hand, a decision finding that case law or

3    the Bankruptcy Code prohibit the formation of such agreements is a question of law, which

4    is reviewed de novo. *See In re Rains*, 428 F.3d at 900. As explained further below, the

5    Court finds that the decision to dismiss the Adversary for lack of standing was reversible

6    under either standard. In sum, whether the Bankruptcy Court (1) chose to rescind the

7    Stipulation then grant the motion to dismiss because, absent the Stipulation, the

8    Committee would lack standing; or (2) agreed with Royal Metal that the law did not permit

9    derivative standing stipulations, thus electing to reconsider the Stipulation Order and

10   grant the motion to dismiss, the result is reversible error. The Ninth Circuit caselaw clearly

11   permits derivative standing agreements, and, under the circumstances, withdrawing the

12   Stipulation constituted an abuse of discretion because it unfairly prejudiced the debtors'

13   estates.

14          The Court first examines the law governing derivative standing stipulations, then

15   turns to the Bankruptcy Court's decision to grant Royal Metal's motion to dismiss.

16   Because the Court reverses the Dismissal Order, the Reconsideration Order will be

17   vacated.

18          **A.    Derivative Standing Agreements**

19          In the Ninth Circuit, "[i]t is well settled that in appropriate situations the bankruptcy

20   court may allow a party other than the trustee or debtor-in-possession to pursue the

21   estate's litigation." *In re Spaulding Composites*, 207 B.R. at 903. Such situations arise

22   either when the debtor-in-possession is unwilling or unable to prosecute claims on behalf

23   of the estate, or when the debtor-in-possession consents to another party litigating on

24   behalf of the estate. *See id.* at 904 (recognizing that stipulated derivative standing was

25   then a newer practice and "the setting for derivative litigation often involves a debtor-in-

26   possession . . . who is hostile to proposed litigation."). When derivative standing

27   stipulations were first considered, the Ninth Circuit reasoned, "[s]o long as the bankruptcy

28   court exercises its judicial oversight and verifies that the litigation is indeed necessary

1    and beneficial, allowing a creditors' committee to represent the estate presents no undue

2    concerns." *Id.* In the years since *Spaulding Composites*, the Ninth Circuit has reiterated

3    its approval of derivative standing stipulations. *See Avalanche Mar., Ltd. v. Parekh (In re*

4    *Parmetex, Inc.)*, 199 F.3d 1029, 1030-31 (9th Cir. 1999) (finding that creditors had

5    standing to sue on behalf of the estate in a Chapter 7 adversary); *see also Estate of*

6    *Spirtos v. One San Bernardino Cnty. Superior Ct. Case Numbers SPR 02211*, 443 F.3d

7    1172, 1176 (9th Cir. 2006) (disclaiming any change to the court's holding in *Parmetex*).

8         By and large, other circuit courts have adopted the reasoning in *Spaulding*

9    *Composites* and permit derivative standing stipulations in a variety of bankruptcy

10   proceedings. *See Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262 F.3d

11   96, 99 (2d Cir. 2001) (adopting the reasoning in *Spaulding Composites*); *Official Comm.*

12   *of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330

13   F.3d 548, 580 (3d Cir. 2003) ("[W]e are satisfied that bankruptcy courts can authorize

14   creditors' committees to sue derivatively to avoid fraudulent transfers for the benefit of the

15   estate."); *In re Blasingame*, 920 F.3d 384, 389 (6th Cir. 2019) (considering the bankruptcy

16   trustee's right to confer derivative standing on a creditor a "well-established practice"); *In*

17   *re Racing Servs., Inc.*, 540 F.3d 892, 902-03 (8th Cir. 2008) (adopting the reasoning in

18   *Spaulding Composites* and *Commodore International*). Some circuits, however, have not

19   yet ruled on the question directly, or consider that derivative standing stipulations are

20   permissible in more narrow circumstances than those allowable in the Ninth Circuit. *See*

21   *In re Baltimore Emerg. Servs. II, Corp.*, 432 F.3d 557, 562-63 (4th Cir. 2005) (declining

22   to resolve whether parties may stipulate to derivative standing); *In re Cleveland Imaging*

23   *and Surgical Hosp., L.L.C.*, 26 F.4th 285, 297 (5th Cir. 2022) (reasoning that a bankruptcy

24   court's decision to confer derivative standing on a creditors' committee "'generally'

25   requires 'that the debtor-in-possession ha[s] refused unjustifiably to pursue the claim'")

26   (citation omitted); *In re Consolidated Indus.*, 360 F.3d 712, 716-17 (7th Cir. 2004)

27   (reasoning "a creditor must show that the trustee has unjustifiably refused the creditor's

28   demand to pursue a colorable claim and obtain leave from the bankruptcy court to

proceed" before derivative standing may be granted). No circuit has found that derivative standing agreements are per se impermissible.

When it adopted the reasoning in *Spaulding Composites*, the Second Circuit further required the bankruptcy court to find that conferring derivative standing on a creditors' committee is "(a) in the best interest of the bankruptcy estate, and (b) is 'necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings." *In re Commodore Int'l Ltd.*, 262 F.3d at 99 (quoting *Spaulding Composites*, 207 B.R. at 904). The Eighth Circuit has since adopted that requirement as well. *See In re Racing Servs.*, 540 F.3d at 902 ("We emphasize, however, that compared to situations in which a creditor seeks derivative standing because the trustee acts unjustifiably, a creditor will typically face a comparatively greater burden to establish derivative standing when the trustee consents."). As a correlated concern, the Second Circuit has also established that "a court may withdraw a committee's derivative standing and transfer the management of its claims, even in the absence of that committee's consent, if the court concludes that such a transfer is in the best interests of the bankruptcy estate." *In re Adelphia Commc'ns*, 544 F.3d 420, 423 (2d Cir. 2008).

The Ninth Circuit has not expressly adopted the two-part test articulated in *Commodore International*, nor has it directly considered when a derivative standing stipulation may be withdrawn. However, the language requiring that conferring derivative standing be "necessary and beneficial" to the "fair and efficient" resolution of the proceedings—the source of both the two-part test and the Second Circuit's analysis for revoking a stipulation—is derived from *Spaulding Composites*. *In re Commodore Int'l, Ltd.*, 262 F.3d at 99; *see also In re Consolidated Nev. Corp.*, 778 F. App'x 432, 435-36 (9th Cir. 2019) ("Other parties may pursue estate claims if the trustee consents . . . or abandons the claims."). Because the Ninth Circuit has not directly spoken to the question, but the Second Circuit's standards are derived from Ninth Circuit precedent, the Court will adopt the Second Circuit's reasoning here.

///

No circuit has found that amendments to the bankruptcy code or developments in Supreme Court caselaw have changed the long-accepted practice of conferring derivative standing on unsecured creditors' committees. In a recent unpublished decision, however, the Ninth Circuit noted in a footnote:

> Because we conclude that the bankruptcy court did not err in denying appellants' motion for derivative standing under any standard, we need not decide whether a bankruptcy court has authority under section 105 to grant standing to bring the estate's claims to a party other than the trustee after *Law v. Siegel*, 571 U.S. 415, 420–21, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014) ("It is hornbook law that § 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code" (internal quotation marks omitted)).

*In re Consolidated Nev. Corp.*, 778 F. App'x at 435 n.1. The Supreme Court held in *Law*, a Chapter 7 bankruptcy case, that "a bankruptcy court may not contravene specific statutory provisions" when exercising its authority under 11 U.S.C. § 105 or its inherent powers. 571 U.S. at 421. The one court that has squarely addressed whether *Law* alters the propriety of derivative standing stipulations found it does not. *See In re SGK Ventures, LLC*, 521 B.R. 842, 848 (Bankr. N.D. Ill. 2014) ("There is no provision of the Bankruptcy Code prohibiting a grant of derivative trustee standing, and so *Law* has no bearing here.").

## B. The Dismissal Order

The Bankruptcy Court rescinded the Stipulation and granted Royal Metal's motion to dismiss the Adversary without explanation. Accordingly, the standard of this Court's review is somewhat unclear. If the Bankruptcy Court elected to reconsider the Stipulation Order and rescind the Stipulation as an equitable matter, the Bankruptcy Court's decision is reviewed for abuse of discretion. On the other hand, if the Bankruptcy Court was persuaded that the Committee lacked Article III standing or that the Bankruptcy Code prohibits a court from conferring derivative standing on an unsecured creditors' committee, then the decision turns on a question of law that is reviewed de novo.

Because the Bankruptcy Court does not explain its reasoning, the Court will consider each possible basis. The Court finds that in either case, the Bankruptcy Court

13

erred by rescinding the Stipulation and by granting the motion to dismiss, and will explain its reasoning in turn.

### 1.    Rescission of the Stipulation

First, the Court will review the Bankruptcy Court's decision to rescind the Stipulation, thereby depriving the Committee of standing to pursue the claims in the Adversary on behalf of the Debtors' estates. As part of the Dismissal Order, the Bankruptcy Court granted Royal Metal's oral motion to amend the Stipulation Order "consistent with this order and Defendant's positions in its Motion to Dismiss." (Exh. 1, ECF No. 10-2 at 4.) Nothing in the hearing transcript or the Dismissal Order explains the Bankruptcy Court's reasoning.

Although the Ninth Circuit does not appear to have addressed the standards for rescinding a previously approved derivative standing stipulation, the Second Circuit has concluded "a court may withdraw a committee's derivative standing and transfer the management of its claims, even in the absence of that committee's consent, if the court concludes that such a transfer is in the best interests of the bankruptcy estate." *In re Adelphia Commc'ns*, 544 F.3d at 423. The Court agrees with the Second Circuit that, just as approval of a derivative standing agreement is committed to the discretion of the bankruptcy court to determine whether conferring standing on a creditors' committee is in the best interest of the estate, so too would revocation of a derivative standing agreement be a matter of the bankruptcy court's discretion. *See id.* at 425 (reviewing the transfer of claims from a creditors' committee to a litigation trust for abuse of discretion). The Court therefore considers whether the Bankruptcy Court abused its discretion by rescinding the Stipulation. The Court finds that it was.

The Bankruptcy Court's decision to amend the Stipulation Order and rescind the Stipulation was an abuse of discretion because it was unexplained and jeopardized the estate's ability to bring the claims against Royal Metal after the Committee and the Debtors had relied on the Stipulation Order. First, the Bankruptcy Court offered no reasoning on the record why rescinding the Stipulation would benefit the Debtors' estates.

1   Unlike in *Adelphia Communications*, where the bankruptcy court "conducted a reasonable
2   analysis of the costs and benefits" of the committee's continued management of the
3   claims, *see id.* at 425, the Bankruptcy Court here did not reveal any reasoning about
4   whether the Committee was adequately managing the Debtors' claims against Royal
5   Metal. Moreover, the Bankruptcy Court did not appear to choose a more suitable party to
6   manage the claims, as the bankruptcy court in *Adelphia Communications* determined
7   when it transferred the claims to a litigation trust, *see id.* at 426; instead, the Bankruptcy
8   Court dismissed the Adversary without identifying another party that was more suitable
9   to bring the claims.

10          Although the decision to rescind the Stipulation without expressing any reasoning
11  may not alone constitute an abuse of discretion, the circumstances of the case clearly
12  show that it was. As the Committee explained in its response to the motion to dismiss,
13  the Debtors and the Committee agreed to share administration of the estates' claims
14  because of the impending expiration of many claims' two-year statute of limitations. (Exh.
15  8, ECF No. 10-2 at 130.) Royal Metal argues both in the motion to dismiss and at the
16  hearing that the Debtors could have pursued the claims against it had they felt that the
17  claims were valuable. (Exh. 7, ECF No. 10-2 at 121; Exh. 12, ECF No. 10-2 at 197.) But
18  as Issa explained in his declaration in support of Debtors' joinder to the motion for
19  reconsideration, "[b]ut for the Stipulation, approved by [the Bankruptcy Court's Stipulation
20  Order], the Debtors themselves would have prosecuted avoidance claims against Royal
21  Metal." (Exh. 15, ECF No. 10-3 at 4.) Indeed, Issa notes that the Debtors acted "[i]n
22  reliance upon the [Stipulation Order]" to preserve their claims. (*Id.* at 5.) The Court is
23  therefore persuaded by Issa's argument in this appeal that the Committee had reasonably
24  relied on the Bankruptcy Court's order conferring derivative standing upon it, and that as
25  a result, the estate will suffer the loss of the claims and the potential value to the estate
26  for any claims on which the statute of limitations has run. (ECF No. 10 at 24.)

27          These facts were knowable to the Bankruptcy Court at the time it issued the
28  Dismissal Order and expressly known at the time of the Reconsideration Order. Not only

did the Bankruptcy Court fail to find that rescinding the Stipulation was in the best interest of the Debtors' estates, but it further failed to consider that the estates' claims may be lost if the Debtors were required to refile in their own name. Because there is no given reason why rescinding the Stipulation would be in the best interests of the Debtors' estates and, in fact, reconsidering the Stipulation Order would harm the estates' interests, rescinding the Stipulation Order was an abuse of discretion.

### 2. Dismissal of the Adversary

The Court will also consider whether the Bankruptcy Court's decision to grant the motion to dismiss, and thereafter amend the Stipulation Order in conformity with its reasoning, was correct as a matter of law. The Court reviews the Bankruptcy Court's decision de novo, because whether the Committee lacked standing to pursue the Adversary and whether the Bankruptcy Court lacked authority to confer derivative standing on the Committee are both questions of law. As explained further below, the Bankruptcy Court's decision must be reversed because each of Royal Metal's arguments lacked merit.

### a. The Committee's Direct Article III Standing

The Committee's lack of direct Article III standing was an irrelevant consideration because the Committee brought the Adversary on behalf of the Debtors estates. Issa admits that absent the Stipulation, the Committee would have lacked Article III standing to bring the claims in the Adversary. (ECF No. 35 at 7.) Whether the Committee suffered an injury-in-fact is therefore irrelevant, Issa argues, because the Committee brought the Adversary not on its own behalf, but on behalf of the Debtors. (*Id.*) Because Royal Metal does not argue the Debtors lacked constitutional standing to pursue an avoidance claim, the Committee had standing to pursue the Debtors' claims on their behalf. (*Id.*) The Court agrees with Issa.

Royal Metal's representations in its motion to dismiss were misleading at best and flatly incorrect at worst. Framing the issue before the Bankruptcy Court as a novel issue presenting unprecedented fairness concerns without citing to *Spaulding Composites*

16

1 deprived the Bankruptcy Court of a complete understanding of Ninth Circuit law. Focusing

2 on the Committee's lack of injury created further confusion, particularly because that

3 question was squarely rejected by the *Spaulding Composites* court as irrelevant when

4 there is a derivative standing stipulation:

5   Whether a creditor has direct standing under § 362 poses an interesting
  question, but we need not address the issue in this case. The Committee

6   filed suit, not in its own right, but on behalf of the estate. Consequently, it
  asserts derivative standing. Derivative standing poses distinct

7   considerations.

8 207 B.R. at 903.[10] These "distinct considerations" do not require finding that the

9 Committee has direct standing to sue on its own behalf, *see id.*, yet Royal Metal continued

10 to insist that the Adversary must be dismissed because the Committee lacked Article III

11 standing. The appropriate inquiry is whether the Debtors would have had standing to bring

12 the claims, not whether the Committee had suffered an injury-in-fact. Royal Metal's

13 arguments distract from the relevant questions and appear to contrive a problem where

14 none exists.

15   Despite being aware that the Ninth Circuit and the BAP have both established that

16 a committee need not show direct standing when bringing claims under a derivative

17 standing agreement, Royal Metal continued to focus on the Committee's lack of Article III

18 standing at the hearing on the motion to dismiss. Royal Metal reiterated that "[t]he Ninth

19 Circuit has never addressed constitutional Article III standing of an unsecured creditors'

20 committee. That issue has not come before the Ninth Circuit," arguing that consequently,

21 conferring standing via a derivative standing stipulation is "not okay" and "can't be done."

22 (Exh. 12, ECF No. 10-2 at 196.) This representation is misleading, as the Ninth Circuit

23 BAP expressly rejected in *Spaulding Composites* that the constitutional standing of an

24 unsecured creditors' committee had any relevance when there was a derivative standing

25 stipulation. *See* 207 B.R. at 903; *see also In re Parmetex*, 199 F.3d at 1031 (considering

26

27 _____

28   [10]Royal Metal rejected the applicability of *Spaulding Composites* in its reply in
support of its motion to dismiss on the grounds that BAP decisions are not precedential.
(Exh. 11, ECF No. 10-2 at 194.)

1    whether creditors had Article III standing as a jurisdictional matter and finding that the

2    derivative standing agreement satisfied the requirement).

3            Royal Metal's representations to the Bankruptcy Court were therefore simply

4    untrue. Consequently, if the Bankruptcy Court was persuaded by Royal Metal's argument

5    that the Committee lacked Article III standing to pursue the Adversary, that error is

6    reversible.

7                    **b.      The Committee's Direct Statutory Authority**

8            For similar reasons as those explained in the previous section, Royal Metal's

9    arguments that the Committee lacks authority under the Bankruptcy Code to pursue the

10   Adversary's claims fail because the Committee is not pursuing the claims in its own right.

11   In its motion to dismiss and at the hearing, Royal Metal argued that the Bankruptcy Code

12   authorizes only the debtor-in-possession or the trustee to assert claims on behalf of the

13   estate, and therefore the Committee may not pursue those claims as a matter of law.

14   (Exh. 7, ECF No. 10-2 at 113-18.) Again, the Committee states explicitly in the Adversary

15   that it is not pursuing the claims on its own behalf, but rather "on behalf of the Debtors'

16   estates," as agents of the debtors-in-possession. (Exh. 6, ECF No. 10-2 at 37.) The

17   Committee was therefore acting in the shoes of the debtors-in-possession, and did have

18   statutory authority to pursue the claims against Royal Metal due to the Stipulation. Indeed,

19   the Ninth Circuit expressly rejected Royal Metal's reasoning in *Parmetex* over 20 years

20   ago:

21           Although Defendants are correct that a trustee must generally file an
             avoidance action . . . we hold that under these particular circumstances—
22           where the trustee stipulated that the Creditors could sue on his behalf and
             the bankruptcy court approved that stipulation—the Creditors had standing
23           to bring the suit.

24   199 F.3d at 1031. Because the Bankruptcy Court had approved the Stipulation, the

25   Committee had statutory authority to bring the claims in the Adversary on behalf of the

26   Debtors' estates.

27   ///

28   ///

                                                    18

### c.    The Stipulation's Validity

Approximately half of Royal Metal's motion to dismiss focused on whether the Stipulation validly conferred standing on the Committee. Despite Royal Metal's duty to disclose controlling authority adverse to its position, it did not reference *Parmetex* in its motion to dismiss. Instead, Royal Metal argued that "the [Bankruptcy Court] cannot confer standing, authority, or capacity upon the Committee where none exists." (Exh. 7, ECF No. 10-2 at 121.) Even after the Committee introduced *Parmetex* and *Spaulding Composites* in its opposition to the motion to dismiss, Royal Metal continued to argue that the law had changed since those cases were decided, urging the Bankruptcy Court to reject the Stipulation and dismiss the Adversary. For the reasons explained below, Royal Metal's arguments misstated current Ninth Circuit law and failed to justify that a change in the law was warranted.

Royal Metal did not disclose controlling authority adverse to its position, despite its duty to do so.[11] Although *Parmetex* was a Chapter 7 case, it is a Ninth Circuit decision addressing the precise Code provisions at issue in the Adversary, holding that a creditors' committee had standing to assert claims derivatively on behalf of the trustee under an agreement between the committee and the trustee. *See* 199 F.3d at 1031. Moreover, the Ninth Circuit has since reaffirmed that *Parmetex* creates an exception to the general rule that trustees are the "exclusive parties" that may sue on behalf of the estate. *See Estate of Spirtos*, 443 F.3d at 1175 (citing *Parmetex* and explaining "[w]e have held that under some circumstances, the trustee may authorize others to bring suit"). *Parmetex* has been cited favorably—and recently—by the Ninth Circuit BAP, as well as by district and

---

[11]Both the ABA Model Rules of Professional Conduct and the Nevada Rules of Professional Conduct stipulate that "[a] lawyer shall not knowingly . . . [f]ail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Nevada Rules of Prof'l Conduct R. 3.3(a)(2); Model Rules of Prof'l Conduct R. 3.3(a)(2). Moreover, the Federal Rules of Civil and Bankruptcy Procedure both provide that, by filing a brief, the attorney certifies "to the best of [their] knowledge . . . formed after an inquiry reasonable under the circumstances" that "the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." Fed. R. Bankr. P. 9011(b)(2); Fed. R. Civ. P. 11(b)(2).

1    bankruptcy courts within the circuit.[12] The decision to omit these cases, binding or

2    otherwise, is perplexing, and may well have created confusion.

3         Adding to the confusion, Royal Metal further argued that the validity of derivative

4    standing agreements is a matter of first impression in the Ninth Circuit. Despite the

5    authorities cited above, Royal Metal represented that "the Ninth Circuit has not issued an

6    opinion as to whether a debtor in possession can grant derivative standing to an

7    unsecured creditor's committee" and encouraged the Bankruptcy Court to "find,

8    consistent with the Supreme Court's statutory interpretation in *Lexmark*, the Ninth Circuit

9    in *Estate of Spirtos* and *Ahcom*, and the Tenth Circuit in *Fox*, that the plain language of

10   the Bankruptcy Code does not authorize it." (Exh. 7, ECF No. 10-2 at 127.) The Court

11   finds that none of these cases support the Bankruptcy Court's decision to grant the motion

12   to dismiss the Adversary.

13        Even if the validity of derivative standing agreements were a matter of first

14   impression, which it is not, the cases Royal Metal cites to either do not support its position

15   or are outlier opinions that have been rejected by the majority view. For example, *Lexmark*

16   was a Lanham Act case in which the Supreme Court examined whether the respondent

17   was within the zone-of-interest to have standing to bring a false advertising claim. *See*

18   572 U.S. at 125-37. The reasoning in *Lexmark* is not even indirectly applicable, as the

19

20   ----
     [12]Just two years ago, a BAP reaffirmed *Parmetex*. *See In re Liu*, BAP No. CC-19-
21   1101-StaL, 2020 WL 718072, at *4 (B.A.P. 9th Cir. Feb. 11, 2020) ("The Ninth Circuit has
     recognized an exception to [the rule that only the trustee has standing to assert legal
22   claims and defenses of the estate], which permits a creditor, with the trustee's agreement
     and the court's approval, to pursue actions on behalf of the estate.") (citing *Parmetex*,
23   199 F.3d at 1031). Several district courts have done the same. *See In re
     Databaseusa.com LLC*, Case No. 2:20-CV-01925-JCM, 2022 WL 1137877, at *3 (D. Nev.
24   Apr. 15, 2022) ("A creditor may be able to bring a derivative suit . . . [h]owever, the suit
     first belongs to the debtor-in-possession.") (citing *Parmetex* and *Estate of Spirtos*); DBD
25   *Credit Funding LLC v. Silicon Labs., Inc.*, Case No. 16-CV-05111-LHK, 2017 WL
     4150344, at *11 (N.D. Cal. Sept. 19, 2017) (denying standing because, unlike in
26   *Parmetex*, the creditor had not obtained derivative standing by consent of the trustee);
     *Kirschner v. Blixseth*, Case No. CV 11-08283 GAF (SPx), 2012 WL 12885070, at *7 (C.D.
27   Cal. Feb. 24, 2012) (noting "[t]he Ninth and other Circuits have expressly approved
     standing under these circumstances," referring to a situation where the trustee and
28   creditors have agreed to confer standing). Moreover, just this year, another bankruptcy
     court in this circuit recognized *Parmetex* and *Estate of Spirtos* as controlling precedent.
     *See In re Grail Semiconductor Sedgwick Fundingco, LLC v. Newdelman*, Case No. 15-
     29890-A-7, 2022 WL 194384, at *28 (Bankr. E.D. Cal. Jan. 20, 2022).

1   issues before the Court there involved whether a party had prudential standing to sue on

2   its own behalf, not derivative standing to sue on behalf of a party that unquestionably had

3   direct statutory standing. *See id.* at 127-32. Moreover, Royal Metal's selective quotations

4   from *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248 (9th Cir. 2010), and *Estate of Spirtos* do not

5   accurately represent those cases' holdings. Although *Ahcom* does state "[w]hen the

6   trustee does have standing to assert a debtor's claim, that standing is exclusive and

7   divests all creditors of the power to bring the claim," the *Ahcom* court was considering

8   whether a claim rightfully belonged to a creditor or a trustee in the first instance, not

9   whether the trustee could authorize a creditor to bring a claim on its behalf. 623 F.3d at

10  1250 (citing *Estate of Spirtos*, 443 F.3d at 1176). As noted above, *Estate of Spirtos*

11  explicitly reaffirmed that the Ninth Circuit recognizes that "under some circumstances, the

12  trustee may authorize others to bring suit." 443 F.3d at 1176. These cases did not overturn

13  *Parmetex*, nor did they invite reconsideration of its holding.[13]

14      The only case Royal Metal cites that did find derivative standing agreements were

15  impermissible under the Bankruptcy Code is *United Phosphorous, Ltd. v. Fox (In re Fox)*,

16  305 B.R. 912, 914 (B.A.P. 10th Cir. 2004). In *Fox*, the Tenth Circuit BAP disallowed

17  derivative standing agreements based on the Supreme Court's reasoning in *Hartford*

18  *Underwriters Insurance Company v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000). *See*

19  *In re Fox*, 305 B.R. at 914-15. Although the Court in *Hartford* interpreted § 506(c) of the

20  Bankruptcy Code as vesting a right in the trustee, exclusive to all other parties, to seek

21  recovery from property securing an allowed secured claim, it further recognized that many

22  courts had permitted creditors and creditors' committees to pursue claims on behalf of

23

---

24      [13]Royal Metal additionally argues that cases decided prior to the 2005 BAPCPA
    amendments to the Bankruptcy Code are no longer good law because the amendments
25  granted "sole authority" to the trustee or debtor-in-possession. (Exh. 7, ECF No. 10-2 at
    192.) But as the Committee noted at the hearing on the motion to dismiss, the BAPCPA
26  amendments did not amend any provisions that would affect standing, nor did they
    prohibit derivative standing agreements which several circuits had since been approving.
27  (Exh. 12, ECF No. 10-2 at 225.) Because the Ninth Circuit has continued to recognize the
    validity of derivative standing agreements post-2005, *see, e.g.*, *Estate of Spirtos*, 443
28  F.3d at 1176, the Court is unpersuaded that the BAPCPA amendments can be read as
    changing the law.

debtors' estates and expressly excluded such practices from its holding. *See* 530 U.S. at 13 n.5. ("We do not address whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under § 506(c).") Despite this caveat, the Tenth Circuit BAP concluded that the language in *Hartford* was "so clear and compelling" that the Court's reasoning would likely apply equally to exclude suits brought under derivative standing agreements. *Id.* at 915. This reasoning not only has not been adopted by the Ninth Circuit, but other bankruptcy courts—even those within the Tenth Circuit—have rejected the conclusion in *Fox*, deeming it as a "tiny minority" opinion. *See, e.g.*, *In re Roman Catholic Church of the Archdiocese of Santa Fe*, 621 B.R. 502, 506-07 (Bankr. D.N.M. 2020) (noting further that "[e]very circuit court that has ruled on the question of derivative standing after *Hartford* has allowed it" and "[a]lmost all bankruptcy courts, BAPs, and district courts have ruled the same way").

Without a clear account explaining the decision to depart from the clearly established practice in the Ninth Circuit permitting derivative standing agreements, the Court must conclude that the Bankruptcy Court incorrectly applied the law. Because circuit precedent permitted the Debtors to confer derivative standing on the Committee via the Stipulation, and the Bankruptcy Court approved the Stipulation, the Committee had standing to pursue the claims in the Adversary on behalf of the Debtors' estates. Royal Metal's motion to dismiss should have been denied, and the Court therefore reverses the Dismissal Order.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that the Bankruptcy Court's order granting the motion to dismiss is reversed.

///

1    It is further ordered that the Bankruptcy Court's order denying the motion for

2 reconsideration is vacated.

3    This case is remanded to the Bankruptcy Court for further proceedings consistent

4 with this order.

5    The Clerk of Court is directed enter judgment in accordance with this order and

6 close this case.

7    DATED THIS 14th Day of June 2022.

8

9

10   MIRANDA M. DU
     CHIEF UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28